Filed 6/22/22  Singh v. Three B Hotels CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JASBIR SINGH,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THREE B HOTELS LLC et al.,<br><br>    Defendants and Respondents. | B308425<br><br>Los Angeles County<br>Super. Ct. No.<br>19STCV39938 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge. Affirmed.

Betty Agawa and Ronald W. Betty for Plaintiff and Appellant.

Knisbacher Law Offices and Alden Knisbacher for Defendants and Respondents.

_____

# INTRODUCTION

This litigation concerns two former business partners and their limited liability company. Plaintiff and appellant Jasbir Singh and defendant and respondent Manmohan Singh Bhamra were equal managing partners of Three B Hotels, a Limited Liability Company (the LLC), which owned and operated a Holiday Inn Express in Enid, Oklahoma. Singh sued Bhamra in Oklahoma alleging Bhamra breached the LLC's operating agreement in several ways, including by misappropriating funds. Singh sought to dissolve the LLC and distribute its assets to the parties. Singh dismissed the Oklahoma lawsuit with prejudice following a successful mediation and the sale of his interest in the LLC to Bhamra at an agreed-upon price.

Shortly after completing the sale, Singh initiated the present litigation against Bhamra and the LLC in the Los Angeles Superior Court, claiming the LLC owed him a portion of profits received during 2018 and 2019—the time period between the mediation and the completion of the sale. Singh had raised this issue in the Oklahoma lawsuit to no avail. Bhamra and the LLC therefore demurred on the ground that this litigation is barred by the parties' comprehensive releases of legal claims in connection with the mediation in Oklahoma. The trial court sustained the demurrer without leave to amend and entered a judgment dismissing Singh's lawsuit. We affirm the judgment.

**FACTS AND PROCEDURAL BACKGROUND**

## 1. Oklahoma Litigation[1]

### 1.1. Complaint

In March 2018, Singh filed an action against Bhamra in the district court for Garfield County in Oklahoma (the Oklahoma lawsuit). Singh filed the action on his own behalf and derivatively on behalf of the LLC. The complaint alleged that Singh and Bhamra were equal managing partners of the LLC, which was then doing business as a Holiday Inn Express in Enid, Oklahoma. Singh alleged Bhamra had taken total control of the LLC and was misusing its funds in violation of the LLC's operating agreement. Singh asserted causes of action styled as breach of fiduciary duty, breach of written operating agreement, abuse of control, corporate waste, unjust enrichment, partition, and dissolution.

In August 2018, the court entered a stipulated restraining order and scheduling order. As pertinent here, the parties had agreed that no distribution of funds should be made to the members of the LLC until certain conditions were met. They also agreed to have the hotel owned and operated by the LLC appraised on or before September 15, 2018, and to mediate the dispute on or before October 15, 2018. Further, the parties agreed to "engage Ken Klingenberg as a court appointed expert to assess the claims of personal use of the funds of [the LLC] and any other claims of inappropriate use or expenditure of company funds

---

[1] The trial court took judicial notice of certain documents filed in the Oklahoma litigation. We take judicial notice of those documents as well. (Evid. Code, §§ 452, 459.)

3

specifically to include the appropriateness of expenditures for hotel use, further that each party shall have an equal and fair opportunity to explain their positions to Mr. Klingenberg and further each reserves the opportunity to contest any findings by Mr. Klingenberg before [the Oklahoma] court."

### 1.2. Mediation Agreement

The parties mediated the dispute and signed a mediation agreement on December 20, 2018. Singh agreed to sell his interest in the LLC to Bhamra for $3.8 million less certain debts of the LLC. The parties committed to draft a formal settlement agreement that would include a release of claims (the first release) as follows: "The Parties shall release one another of all claims, whether asserted in the Lawsuit or not, related to [the LLC] or the Holiday Inn Express in Enid, Oklahoma, including any claims relating to or arising from the operation of [the LLC] or the Holiday Inn Express in Enid, Oklahoma. The Parties expressly reserve and do not release any and all other claims whether asserted or not asserted as of the date of this Mediation Agreement. The Parties also expressly reserve and retain all rights arising under this Mediation Agreement and the Settlement Agreement."

The parties also agreed that Klingenberg's findings regarding any improper use of the LLC's funds would "be binding upon them, adopted by the Court, and non-appealable."

4

### 1.3. Klingenberg's Report

Klingenberg provided an initial report to the parties in May 2019 and a final report in August 2019.[2] After the initial report, both Singh and Bhamra submitted lists of concerns to Klingenberg, and the final report includes Klingenberg's resolution of those concerns.

As pertinent here, Klingenberg's final report noted that the parties disagreed about the ending date for his inquiry regarding the potential misuse of LLC funds. Bhamra took the position that the inquiry should terminate as of December 20, 2018, the date the mediation agreement was signed and the parties agreed on a sale price for Singh's half of the LLC. Singh, by contrast, urged that the income and expenses of the LLC should be evaluated through "the most recent date available," i.e., including the end of 2018 and most of 2019. Klingenberg determined that December 20, 2018 was the appropriate date, in part because the parties agreed to the sale as well as the price for the sale on December 20, 2018. He ultimately concluded that Singh was owed an additional distribution of $103,644.13 from the LLC, reduced by half the amount of Klingenberg's fees.

### 1.4. Certificate of Sale

In early August 2019, Singh and Bhamra signed a "Certificate of Sale of Membership Interest" that contained details of the sale and which included the following release (the second release): "The Parties shall release one another from all claims, whether asserted in the lawsuit or not, that are related to [the LLC] and the Holiday Inn Express in Enid, Oklahoma,

---

[2] Only the final report is included in the appellate record.

5

including any claims arising from the operation of [the LLC] and the Holiday Inn Express in Enid, Oklahoma. The parties also expressly reserve and retain all rights under the Mediation Agreement and Settlement Agreement."

In addition, the Certificate of Sale stated that Singh "shall file a Dismissal With Prejudice of all claims asserted in the [Oklahoma lawsuit] within 30 days after receiving the funds [due to Singh.]"

### 1.5.   Singh's Request for Profits from 2018 and 2019

Bhamra filed a motion to enforce the mediation agreement in late August 2019. The motion asserted that Bhamra was ready to complete the sales transaction and pay Singh all monies owed according to the terms of the mediation agreement and Klingenberg's final report, but that Singh had refused to sign the closing documents and was raising "issues that were either not agreed to at mediation, eight months ago, or were not discussed during the ten hour marathon mediation."

Singh opposed the motion. He argued, among other things, that certain aspects of Klingenberg's findings and calculations were incorrect, that certain misappropriated funds had not been accounted for, and that certain assets had not been included in the appraiser's valuation. Relevant here, Singh asserted, "In addition to receipt of the sale price for his interest in [the LLC], Singh is entitled to his share of the profit or loss attributable to his 50% interest in [the LLC] for 2018 and 2019." He requested that the closing of the sale be delayed so that he could review the LLC's accounting and tax records and determine his share of the profit or loss attributable to his interest in the LLC.

On September 10, 2019, the Oklahoma court heard the motion to enforce the mediation agreement. The court's order

noted that Klingenberg's calculations were mathematically correct and, citing the parties' mediation agreement, the court adopted Klingenberg's final report. The court also found the mediation agreement was valid and enforceable.

### 1.6. Sale of Singh's Interest in the LLC and Dismissal of the Action with Prejudice

On October 25, 2019, Singh and Bhamra signed and submitted a revised payoff demand to escrow, reflecting that Singh would be paid $1,365,481.47 upon completion of the sale transaction. Escrow closed on October 31, 2019.

On November 8, 2019, Singh dismissed the Oklahoma lawsuit with prejudice.

## 2. Present Litigation

### 2.1. Operative Complaint

Singh initiated the present lawsuit in Los Angeles County Superior Court on November 5, 2019. The operative third amended complaint names Bhamra and the LLC as defendants and includes five claims: breach of contract, breach of oral agreement, breach of fiduciary duty, unjust enrichment, and a request for an accounting. Singh generally alleges that he agreed, as part of the mediation agreement signed on December 20, 2018, to sell his interest in the LLC to Bhamra and that the transaction was completed on or about October 31, 2019. Singh also asserts that as part of the mediation agreement, Singh and defendants "agreed to utilize[ ] [Klingenberg] as the expert to determine whether and to what extent Bhamra and/or Singh improperly expended or received any monies of [the LLC.] [Klingenberg] did not make a determination regarding profits and losses due to Bhamra or Singh. [¶] [Klingenberg] only reviewed [the LLC] up

to and including December 20, 2018, and specifically refused to look at the financial status of [the LLC] after December 20, 2018."

The complaint alleges that defendants breached the written operating agreement for the LLC and breached an oral agreement by failing to make profit distributions from the LLC to Singh in 2018 and 2019. Further, Singh alleges that such conduct unjustly enriched defendants. Finally, Singh alleges defendants breached their fiduciary duty to him by failing to provide an accounting of the LLC's financials and by refusing to pay the profits owed to him from 2018 and 2019. Singh also requests a court-ordered accounting to determine the amount of profit owed to him for 2018 and 2019.

### 2.2. Demurrer

Defendants filed a demurrer, arguing that Singh's dismissal of the Oklahoma complaint with prejudice, together with the doctrine of res judicata and the full faith and credit clause of the Constitution of the United States, bars the present action. Specifically, defendants asserted "[t]he parties mediated the Oklahoma lawsuit to a successful resolution and signed a mediation agreement and release of claims. Singh and Bhamra agreed to allow independent attorney Ken Klingenberg to value [the LLC], and to determine the buyout price. Klingenberg's valuation was final with no right of appeal. Klingenberg rejected Singh's bid for [the LLC's] post-mediation, 2018-2019 profits. [¶] Singh appealed Klingenberg's valuation to the Oklahoma trial court. The Oklahoma court rejected Singh's attempt to back out of the mediation agreement, upheld Klingenberg's valuation, and rejected Singh's bid for [the LLC's] 2018 and 2019 profits. [¶] Singh then signed a buyout agreement, and another full release,

Bhamra bought out Singh's interest in [the LLC] for 1.4 million dollars, the Oklahoma court entered a final judgment, and Singh did not appeal." In light of these undisputed facts, defendants argued, Singh's claims in the current action have already been litigated and are therefore barred.

### 2.3. Ruling

The court took judicial notice of several documents from the Oklahoma lawsuit, including the complaint, the mediation agreement, the motion to enforce the settlement agreement, Singh's opposition to that motion, and Singh's dismissal of the Oklahoma lawsuit with prejudice. Based on the judicially noticed records from the Oklahoma lawsuit, the court concluded Singh had released his claim for 2018 and 2019 profits from the LLC. Specifically, the court cited the first release, contained in the mediation agreement, that stated the parties released one another from "all claims … related to the LLC or the Holiday Inn Express in Enid, Oklahoma." And, the court noted, the Oklahoma court found the mediation agreement was enforceable. The court also noted that Singh's claim for half the LLC's profits in 2018 and 2019 was raised in the Oklahoma lawsuit and resolved against him, after which time Singh completed the sale and dismissed the Oklahoma lawsuit with prejudice, as required by the mediation agreement.

In short, the court found, "The claim for lost profits is related to [the LLC] and was asserted in the [Oklahoma] lawsuit. [Singh] has therefore released these claims." After noting Singh would be unable to amend his complaint to cure its defects, the court sustained the demurrer without leave to amend.

### 2.4.  Judgment and Appeal

The court entered a judgment of dismissal on August 26, 2020. Singh timely appeals.

## DISCUSSION

### 1.  Standard of Review

We independently review a trial court's order sustaining a demurrer to determine whether the operative complaint alleges facts sufficient to state a cause of action. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.) We assume the truth of all properly-pled factual allegations and matters that are judicially noticeable. (*Ibid*.) We also liberally construe the complaint's allegations with a view toward substantial justice. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7.) But where facts appearing in attached exhibits or judicially noticed documents contradict, or are inconsistent with, the complaint's allegations, we must rely on the facts in the exhibits and judicially noticed documents. (*Ivanoff*, at p. 726.)

When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the plaintiff can amend the pleading to cure the defect. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) If the defect can be cured, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. (*Ibid*.) The burden of proving such reasonable possibility is squarely on the plaintiff. (*Ibid*.) Such a showing can be made for the first time on appeal. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711; *City of Torrance v. Southern California Edison Co.* (2021) 61 Cal.App.5th 1071, 1083–1084.)

Finally, " 'we do not review the validity of the trial court's reasoning but only the propriety of the ruling itself. [Citations.]' [Citation.]" (*Align Technology, Inc. v. Tran* (2009) 179 Cal.App.4th 949, 958.) Accordingly, we will affirm the " 'trial court's decision to sustain the demurrer [if it] was correct on any theory. [Citation.]' [Citation.]" (*Ibid*.)

**2.     The court properly sustained defendants' demurrer without leave to amend.**

The court found that Singh's releases in the prior litigation bar his claims here. We agree that Singh's claims are barred.

The claim preclusion doctrine, formerly called res judicata, "prohibits a second suit between the same parties on the same cause of action." (*Boeken v. Philip Morris USA, Inc*. (2010) 48 Cal.4th 788, 792 (*Boeken*); see also *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 91 (*Kim*).) "Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) " 'Retraxit' describes the particular application of claim preclusion to a claim that has been dismissed with prejudice. [Citation.] A dismissal with prejudice is considered a judgment on the merits preventing subsequent litigation between the parties on the dismissed claim. [Citations.]"[3] (*Kim*, at p. 91; see also *Winterhalder v. Burggraf Restoration, Inc*., 2011 OK CIV

---

[3] The full faith and credit clause of the federal Constitution obligates a state to honor judgments from the courts of sister states. (U.S. Const., art. IV, § 1; see also 28 U.S.C. § 1738 [federal statute codifying full faith and credit clause]; and see, e.g., *R.S. v. PacifiCare Life & Health Ins. Co*. (2011) 194 Cal.App.4th 192, 198.)

11

APP 38, ¶ 14, 256 P.3d 84 ["It has long been the rule in Oklahoma that: [¶] A dismissal of a suit made after, and based upon, an agreement between the parties by which a compromise settlement and adjustment of the subject-matter in dispute is made, is a dismissal on the merits, and is equivalent to a judgment of retraxit at common law; and as such would be a bar to further litigation on the same subject between the parties. *Turner v. Fleming*, 1913 OK 155, ¶ 3, 130 P. 551, 552."].)

Taking the elements of claim preclusion in order, we first consider whether the Oklahoma lawsuit and the present one concern the same cause of action. " 'In California the phrase "cause of action" is often used indiscriminately … to mean *counts* which state [according to different legal theories] the same cause of action … .' [Citation.] But for purposes of applying the doctrine of res judicata, the phrase 'cause of action' has a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced. [Citation.] As we explained in *Slater v. Blackwood* [(1975)] 15 Cal.3d [791,] 795: '[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief." [Citations.]' Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right.

(*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 954.)" (*Boeken, supra*, 48 Cal.4th at p. 798.)

In the Oklahoma lawsuit, Singh generally alleged Bhamra had misappropriated funds and misused property belonging to the LLC. Singh, individually and on behalf of the LLC, sought to recover misused funds, sell the LLC's assets, settle its debts and liabilities, close the business, and distribute the LLC's assets to its members. Individually, then, Singh sought to maximize the value of and liquidate his interest in the LLC. And he did so. In the settlement agreement, the parties agreed to the terms of sale–$3.8 million less certain debts of the LLC and adjusted for misuse of corporate funds as determined by Klingenberg. The court found the settlement agreement to be enforceable and the sale of Singh's interest was eventually consummated.

In the present suit, Singh seeks to vindicate the same primary right, i.e., to recover the maximum value of his interest in the LLC. Specifically, he claims in this litigation that he is entitled to a share of profits generated by the LLC after the parties signed the settlement agreement but before the sale of his interest in the LLC was completed. And he asserts Bhamra violated the LLC's operating agreement by failing to distribute profits from 2018 and 2019. Stated slightly differently, Singh contends in the present litigation that the value of his interest in the LLC at the time of sale was higher than the $3.8 million agreed-upon price because he was also entitled to undistributed profits received by the LLC. As already explained, this issue was presented and rejected in the Oklahoma lawsuit.

As to the second element of claim preclusion, there is no question that the parties in the Oklahoma lawsuit and this lawsuit are the same: Singh, Bhamra, and the LLC.

13

Finally, and as to the third element, there is a final judgment in the Oklahoma lawsuit. "A dismissal with prejudice is considered a judgment on the merits preventing subsequent litigation between the parties on the dismissed claim. [Citations.]" (*Kim, supra*, 9 Cal.5th at p. 91; see also *Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 694 ["A court-approved settlement acts as a final judgment on the merits for the purposes of res judicata."].)

Notably, " 'parties may by agreement limit the legal effect of a dismissal with prejudice by agreement so that it would not constitute a retraxit and affect their rights in a later pending action.' " (See *Legendary Investors Group No. 1, LLC v. Niemann* (2014) 224 Cal.App.4th 1407, 1411.) The parties here did just the opposite. As the trial court found, Singh signed two releases during the course of the Oklahoma litigation. Both releases stated that the parties "release[d] one another from all claims, whether asserted in lawsuit or not, that are related to [the LLC] and the Holiday Inn Express in Enid, Oklahoma, including any claims arising from the operation of [the LLC] and the Holiday Inn Express in Enid, Oklahoma." Thus, Singh's claim of entitlement to profits received by the LLC is not only barred under the claim preclusion doctrine, but it plainly falls within the scope of the parties' releases.[4]

[4] Because we conclude Singh's claims are barred, we need not address his argument that as a dissolved entity, the LLC is unable to defend itself in this lawsuit.

## DISPOSITION

The judgment is affirmed. Respondents Three B Hotels LLC and Manmohan Singh Bhamra shall recover their costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.